# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:18-cv-160

| | |
|---|---|
| GREGORY HANNAH, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | COMPLAINT |
| ) | |
| WESTROCK SERVICES, INC. ) | |
| ) | |
| Defendant. ) | |

Now comes Plaintiff, requesting a jury trial, and alleges the following against Defendant:

## PARTIES

1. Plaintiff is a male citizen and resident of Rutherford County, North Carolina and worked for Defendant in that same County from October 2013 until his termination on May 7, 2017.

2. Defendant WestRock Services, Inc. is a Georgia corporation that operates a manufacturing facility in Forest City, North Carolina. It is duly registered to do business in North Carolina.

3. At all times relevant to this Complaint, Defendant employed Plaintiff at its Forest City facility.

4. Defendant was Plaintiff's "employer" for purposes of 42 U.S.C. §2000e-(b) and Plaintiff was Defendant's "employee" for purposes of 42 U.S.C. §2000e-(f)

## JURISDICTION AND VENUE

5. Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, and the common law of North Carolina.

6. This court has original jurisdiction over Plaintiff's federal claim under 28 U.S.C. § 1331 and may exercise supplemental jurisdiction over the state law claims under 28 U.S.C § 1367, as the state and federal law claims arise out of the same common facts.

7. After he was terminated under the circumstances alleged below, Plaintiff filed with the Equal Employment Opportunity Commission ("EEOC") a timely charge of gender discrimination, charge number 430-2017-01686.

8. Plaintiff has received a Notice of Right to Sue for charge 430-2017-01686. That Notice was mailed to him on March 6, 2018.

**FACTS**

9. Plaintiff is a gay male and worked in production for Defendant. He was hired in October 2013 through a temporary employment agency and Defendant made him a regular employee in January 2015.

10. In June 2015, Defendant gave Plaintiff a raise and moved him to second shift in Receiving.

11. Shortly after that promotion, Plaintiff's future spouse began to work at the facility through a temp agency.

12. Rumors spread through the plant that the two men were gay partners, drawing lots of ridicule from some at the facility.

13. Plaintiff's department manager, Danny Lynch, was particularly homophobic and began to harass Plaintiff over his sexual orientation.

14. Lynch would make disparaging comments about Plaintiff's sexual orientation and appearance, such as saying to a truck driver "would you let him suck your dick?"

15. Plaintiff worked second shift, so he could avoid Lynch most of the time except for the short time they overlapped each day.

16. There were no issues about Plaintiff's performance until April 2016, when other learned the Plaintiff and his partner had decided to marry under the court rulings allowing for same sex weddings.

17. Lynch began to write Plaintiff up over work issues. Some of the complaints were daily.

18. As the file thickened, Lynch would show it to Plaintiff, threatening his employment.

19. Lynch then issued formal warnings in October and November 2016 and January 2017.

20. The complaints often involved matters that Lynch could not disprove – a claim days or weeks after the fact that stock was missing on the other shift on a previous date.

21. Lynch also had an employee falsely report to Human Resources that I had made an inappropriate comment to that employee and touched him in a sexual manner.

22. The investigation showed this accusation was false.

23. The employee later admitted that Lynch had put him up to the false story and told Plaintiff that Lynch and his secretary bad-mouthed him for being gay.

24. Plaintiff had no errors at work for a five month period, so Lynch wrote Plaintiff up the month he got married for arguing with another employee, the first time his "conduct" was an issue in his time with Defendant.

25. Shortly after Plaintiff married, Lynch fired him, telling him he sent an empty box out for shipping.

26. A memo written the next day and provided to the EEOC by Defendant stated that 50 pieces of shelving parts were missing from a box on first shift – the shift that Lynch worked.

27. The allegation that Plaintiff was responsible for this alleged shipping mistake was completely false and a pretext for firing Plaintiff solely because of his sexual orientation and that he had married recently.

28. On information and belief, Defendant fired Lynch when it learned that his homophobia motivated the termination of Plaintiff.

29. As result of the termination, Plaintiff suffered lost wages and benefits and suffered from the distress that caused in his life, and from the humiliation of being terminated because he had lawfully married his gay partner.

**FIRST CAUSE OF ACTION**
**(Gender Discrimination – 42 U.S.C. § 2000e-2(a)(1))**

30. Plaintiff incorporates all prior paragraphs by reference.

31. Defendant discriminated against Plaintiff on account of his sex, male and the fact that was gay and had married another male.

32. Defendant discriminated against Plaintiff on account of his sex because his decision to marry a man offended gender stereotypes that his manager and many others at Defendant embraced intensely.

33. Plaintiff was performing his job at a satisfactory level when he was terminated because his boss, Lynch, abhorred the fact that Plaintiff was gay and, even more, detested the fact he had married another man.

34. The reason Defendant gave for the termination – that Plaintiff had failed to put parts in a box of shelving – was deliberately false and a pretext. Even if true, which it was not, it would have been the first shipping error plaintiff had made in at least six months.

35. On information and belief, no other employee has been terminated under similar circumstances.

36. Defendant's employees, including Lynch and his secretary showed rank hostility toward Plaintiff over his sexual orientation, particularly after his marriage, when Lynch become to write him up.

37. Plaintiff seeks and is entitled to reinstatement with back pay under 42 U.S.C. § 2000e-5(g)(1) and compensatory damages under 42 U.S.C. § 1981a(b) for the distress and injuries he suffered as a result of losing employment for a period of time.

38. Plaintiff also seeks and is entitled to punitive damages under 42 U.S.C. § 1981a(b), as the actions complained of were sanctioned by managers of Defendants who knew or were recklessly indifferent to the fact that Plaintiff was being fired over his sexual orientation.

39. Plaintiff also seeks costs and reasonable attorney's fees under 42 U.S.C. § 2000e-5(k).

## SECOND CAUSE OF ACTION
### (Wrongful Discharge)

40. Plaintiff incorporates all prior paragraphs by reference.

41. The North Carolina Legislature has declared in N.C.G.S. § 143-422.2, the North Carolina Equal Employment Practices Act that:

> It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of . . . sex . . . . by employers which regularly employ 15 or more employees.
>
> It is recognized that the practice of denying employment opportunity and discriminating in the terms of employment foments domestic strife and unrest, deprives the State of the fullest utilization of its capacities for advancement and development, and substantially and adversely affects the interests of employees, employers, and the public in general.

42. Defendants' actions in terminating Plaintiff on account of his sex, and in resentment over his decision to marry a person of the same sex, in violation of gender stereotypes, directly violated this express public policy of the State of North Carolina. Thus, the termination of Plaintiff was wrongful and unlawful.

43. Further, Plaintiff was terminated for exercising his legally protected right to marry a person of the same sex under the marriage laws of the state. Terminating an employee for exercising a legally protected right in his private affairs is a violation of the public policy of the state.

44. As a result of that wrongful discharge, Plaintiff has suffered loss of employment and income and benefits, as well as humiliation and emotional distress. He seeks and is entitled to reinstatement with back pay and compensatory tort damages.

45. The actions of Defendants were taken and approved by management and exhibited a willful and wanton disregard for Plaintiff's rights and actual malice toward him. Plaintiff had a clearly established legal right to marry. Such actions are contrary to the public interest.

46. Plaintiff seeks and is entitled to punitive damages from Defendant to the maximum extent allowed by Chapter 1D of the General Statutes.

## JURY DEMAND

47. Plaintiff demands that all matters be tried before a jury of his peers.

## PRAYER FOR RELIEF

48. Upon the trial of this matter, Plaintiff prays that the Court enter Judgment for him and award the following relief:

   a. Actual and compensatory damages as allowed under the cited sections of Title VII and the common law of North Carolina;

   b. Reinstatement with back pay;

   c. Punitive damages under 42 U.S.C. § 1981a and Chapter 1D of the North Carolina General Statutes;

   d. The costs of this action, including reasonable attorney's fees under 42 U.S.C. § 2000e-5(k)

   e. Any further the relief the Court deems just and necessary.

Respectfully submitted this 7th day of June, 2018.

                                      **s/ S. Luke Largess**
                                      S. Luke Largess (N.C. Bar #17486)
                                      TIN, FULTON, WALKER & OWEN, P.L.L.C.
                                      301 East Park Avenue Charlotte, NC 28203
                                      (704) 338-1220 llargess@tinfulton.com
                                      Attorney for the Plaintiff