# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:18 CV 160

| | |
|---|---|
| GREGORY HANNAH, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| ) | |
| WESTROCK SERVICES, INC., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court on Defendant's Motion to Dismiss (Doc. 4), which has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). Having carefully considered the arguments, the record, and applicable authority, the undersigned respectfully recommends that the Motion be granted.

## I.   Procedural Background

On June 7, 2018, Plaintiff Gregory Hannah ("Hannah") filed his Complaint (Doc. 1).

On July 2, 2018, Defendant WestRock Services, Inc. ("WestRock") filed the instant Motion to Dismiss (Doc. 4) and a Brief in Support (Doc. 5). On July 23, 2018, following an extension of time (Docs. 10, 11), Hannah responded (Doc. 12). WestRock replied on July 30, 2018 (Doc. 13).

Notices of supplemental authority were submitted by Hannah on October 2, 2018 (Doc. 14) and by WestRock on October 3, 2018 (Doc. 15).

## II. Factual Background

The allegations in Hannah's Complaint, taking all disputed facts and reasonable inferences in favor of Hannah, are as follows:

In approximately October of 2013, Hannah, a gay male, began working for WestRock. See Compl. (Doc. 1) ¶¶ 1, 9. Hannah was originally employed through a temporary employment agency and "worked in production" but was hired by WestRock as a regular employee in approximately January of 2015. Id. ¶ 9.

In June of 2015, WestRock promoted Hannah to a new position on "second shift in Receiving" with increased pay. Id. ¶ 10, 11.

Shortly thereafter, Hannah's romantic partner, who is male, also began working for WestRock through a temporary employment agency. (Doc. 1) ¶ 11.

Rumors concerning the relationship between Hannah and his partner circulated among some WestRock employees, "drawing lots of ridicule." Id. ¶ 12.

Hannah's department manager, Danny Lynch ("Lynch"), was "particularly homophobic and began to harass Hannah over his sexual orientation". Id. ¶ 13. Lynch's conduct included making disparaging comments about Hannah's sexual orientation and appearance and making a vulgar comment to "a truck driver" regarding Hannah. Id. ¶ 14.

Hannah avoided interacting with Lynch when their shifts overlapped each workday. Id. ¶ 15.

There were "no issues about Hannah's performance" until April of 2016 when employees at WestRock learned that Hannah planned to marry his partner. (Doc. 1) ¶ 16.

Subsequently, Lynch began to "write [Hannah] up" sometimes on a daily basis. Id.

2

¶ 17.  On one occasion, Lynch showed Hannah how his employee file had increased due to the number of complaints, an action Hannah perceived as a threat to his employment. Id. ¶ 18.

Lynch issued formal warnings to Hannah in October and November of 2016, and in January of 2017.  Id. ¶ 19.

Lynch's complaints often involved events that had occurred several days or weeks before, and as such, were difficult for Hannah to refute.  Id. ¶ 20.

On one occasion, an employee at WestRock's facility complained that Hannah had inappropriately touched the employee, though a subsequent investigation by WestRock revealed this accusation to be false.  Id. ¶¶ 21-22.  The complaining employee also later acknowledged that "Lynch had put him up to the false story" and that Lynch and Lynch's secretary had "bad-mouthed [Hannah] for being gay".  Id. ¶ 23.

After this incident, Hannah did not have any further issues with Lynch for a period of five months.  (Doc. 1) at 24.  However, during the month that Hannah and his partner married, Lynch filed a complaint against Hannah for arguing with another employee.  Id.

On May 7, 2017, Lynch terminated Hannah's employment, alleging that Hannah was responsible for a shipping error that occurred during his shift.  Id. ¶¶ 1, 25.

WestRock subsequently terminated Lynch's employment.[1]  Id. ¶ 28.

---

[1] Hannah's Complaint alleges "on information and belief, WestRock fired Lynch when it learned that his homophobia motivated [Hannah's] termination." See Compl. (Doc. 1) ¶ 28.

**III. Legal Standard**

When presented with a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must determine whether the complaint on its face states a plausible claim for relief.  See Francis v. Giacomelli, 588 F. 3d 186, 189, (4th Cir. 2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 670 (2009)).  In this regard, the court accepts the well-pled allegations in the complaint as true and construes them in the light most favorable to the plaintiff.  Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).  The court, however, is not required to accept as true "legal conclusions, elements of a cause of action, bare assertions devoid of further factual enhancement, unwarranted inferences, unreasonable conclusions, or arguments."  Richardson v. Shapiro & Brown, LLP, No. 17-2064, 2018 WL 4520372, at *1 (4th Cir. Sept. 20, 2018) (citing Consumeraffairs.com, 591 F.3d at 255).

A complaint may be dismissed "either when it asserts a legal theory that is not cognizable as a matter of law, or if it fails to allege sufficient facts to support an otherwise cognizable legal claim."  See Engebretson v. Mahoney, No. CV 09–98–M–DWM–JCL, 2010 WL 2683202, at *2 (D. Mont. June 10, 2010).

**IV. Discussion**

Hannah's Complaint contains two claims: 1) a claim for discrimination under federal law, and 2) a claim for wrongful discharge under North Carolina state law. These claims are addressed in turn, below.

### A. Hannah's Title VII Claim

Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e-2 et seq., makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's . . . sex." The Supreme Court has not directly addressed the question of whether the language "because of . . . sex" extends to discrimination on the basis of sexual orientation.[2]

The Fourth Circuit, and district courts within the circuit, however, have taken up this topic. In Hopkins v. Baltimore Gas and Elec. Co., 77 F.3d 745 (4th Cir. 1996), a male plaintiff alleged that his male supervisor created a sexually hostile environment. The district court granted summary judgment in favor of the former employer and the plaintiff appealed. The Fourth Circuit affirmed, but the section of the opinion discussing "the actionability of same sex harassment" was not joined by a majority of the members of the panel, who found it "quite unnecessary to the resolution of [the] case." Id. at 755.

The same year, the Fourth Circuit decided Wrightson v. Pizza Hut of Am., Inc., 99 F.3d 138, 139 (4th Cir. 1996) in which the plaintiff, a heterosexual male, complained of sexual harassment by his homosexual male supervisor and homosexual male co-workers. Id. at 139. The district court dismissed Wrightson's claim on the basis that all of the

---

[2] Two matters currently pending before the Supreme Court—Altitude Express, Inc., et al., Petitioners v. Melissa Zarda, as Executor of the Estate of Donald Zarda, et al., No. (17-1623), June 1, 2018, and Gerald Lynn Bostock, Petitioner v. Clayton County, Georgia, No. (17-1618), June 1, 2018—involve this issue.

involved individuals were male. Id. at 141. On appeal, the Fourth Circuit reversed, holding that "a same-sex 'hostile work environment' sexual harassment claim may lie under Title VII where a homosexual male (or female) employer discriminates against an employee of the same sex or permits such discrimination against an employee by homosexual employees of the same sex." Id. at 143. In response to a further argument by the employer that the dismissal should nonetheless be upheld because the plaintiff's claim actually was not that he was harassed because of his sex, but, rather, that he was harassed because of his sexual orientation, the court stated:

> The short answer to this contention is that, while it is true Title VII does not afford a cause of action for discrimination based upon sexual orientation, *see Williamson v. A.G. Edwards & Sons, Inc.,* 876 F.2d 69, 70 (8th Cir.1989) ("Title VII does not prohibit discrimination against homosexuals."), *cert. denied,* 493 U.S. 1089, 110 S.Ct. 1158, 107 L.Ed.2d 1061 (1990); *DeSantis v. Pacific Telephone & Telegraph Co.,* 608 F.2d 327, 329-30 (9th Cir.1979) ("Title VII's prohibition of 'sex' discrimination applies only to discrimination on the basis of gender and should not be judicially extended to include sexual preference such as homosexuality."), Wrightson does not allege that he was discriminated against because he is heterosexual.

Id. at 143.

Multiple district courts across the circuit have referenced Wrightson or Hopkins when dismissing Title VII claims based on sexual orientation. See e.g., Hoffman v. Family Dollar Stores, Inc., 99 F. Supp. 3d 631 (W.D.N.C. 2015) (citing Hopkins in dismissing claim by gay male, and stating that "to the extent that Plaintiff's complaint alleges discrimination based on sexual preference, such discrimination is not protected by Title VII"); Hinton v. Virginia Union Univ., 185 F. Supp. 3d 807, 815-17 (E.D. Va. 2016)

6

(citing Wrightson and dismissing Title VII claim by gay male for discrimination on account of his sexual orientation); Churchill v. Prince George's City Public School, No. PWG-17-980, 2017 WL 5970718, at *4 (D. Md. Dec. 1, 2017) (dismissing claim based on sexual orientation and finding Wrightson to be binding); Brown v. Walmart Stores E., LLP, No. 4:18-CV-20-FL, 2018 WL 4903254, at *5 (E.D.N.C. Oct. 9, 2018) (citing Wrightson and stating that "the Fourth Circuit [does] not recognize a right of action under Title VII for discrimination on the basis of sexual orientation"); Snyder v. Ohio Elec. Motors, Inc., No. 1:17-CV-00134, 2018 WL 1353124, (W.D.N.C. Mar. 15, 2018) (citing Hopkins and Wrightson).

Hannah argues strenuously that Hopkins and Wrightson have not compelled these decisions and urges the Court, instead, to follow the opinions of the Equal Employment Opportunity Commission in Baldwin v. Foxx, EEOC DOC 0120133080 (E.E.O.C.), 2015 WL 4397641, (July 15, 2015), the Second Circuit *en banc* in Zarda v. Altitude Express, Inc., 883 F.3d 100 (2d Cir. 2018), and the Seventh Circuit *en banc* in Hively v. Ivy Tech Cmty. Coll. of Indiana, 853 F.3d 339 (7th Cir. 2017). That is, Hannah argues that the progeny of Hopkins and Wrightson have interpreted those authorities too broadly, giving undue weight to statements that should be regarded as dicta.

The argument that Wrightson has been overread is not a new one, see e.g., Hinton, 185 F. Supp. 3d at 815 (plaintiff "challenges the precedential value of Wrightson in an attempt to dislodge the cases that have restated or relied upon Wrightson"), and courts have noted that the statement—"Title VII does not afford a cause of action for discrimination based upon sexual orientation"—was dicta in that case. See e.g., Hinton, 185 F. Supp. 3d

7

at 815 ("Although Wrightson's rule began its life as dicta, the rule has subsequently been incorporated in a substantive manner into the holdings of several district courts[.]"); Churchill v. Prince George's City Public School, No. PWG-17-980, 2017 WL 5970718, at *4 (D. Md. Dec. 1, 2017) ("Churchill is correct that the Fourth Circuit in Wrightson addressed this question only in dicta.").

The language of Wrightson, however, remains direct and unambiguous. See Churchill, 2017 WL 5970718, at *4 (D. Md. Dec. 1, 2017); Evans v. Georgia Reg'l Hosp., 850 F.3d 1248, 1256 (11th Cir.), cert. denied, 138 S. Ct. 557 (2017) ("though they disagree with the decisions, Evans and the EEOC acknowledge that other circuits have held that sexual orientation discrimination is not actionable under Title VII") (citing Wrightson, 99 F.3d at 143).

Further, the Fourth Circuit has not taken issue with the district courts' conclusions; to the contrary, Wrightson has been cited favorably, albeit in an unpublished opinion. See Murray v. N.C. Dep't of Pub. Safety, 611 Fed. App'x. 166, 166 (4th Cir. 2015).

In Snyder v. Ohio Elec. Motors, Inc., No. 1:17-CV-00134, 2018 WL 1353124 (W.D.N.C. Mar. 15, 2018), a similar case from this District, the Court followed these authorities in dismissing a claim of alleged discrimination on account of the plaintiff's sexual orientation. The same result is compelled by "Wrightson's rule" in this matter.

Perhaps recognizing the challenge posed by existing caselaw, Hannah attempts to argue that his claim is not based solely on discrimination due to his sexual orientation, but also on discrimination inflicted on account of his gender and his marriage to another male. Compl. (Doc. 1) ¶ 31 ("Defendant discriminated against Plaintiff on account of his sex,

8

male, and the fact that he was gay and had married another male."); Pl. Resp. (Doc. 12) at 6 ("Hannah challenged gender norms by marrying someone of the same sex, and Lynch's decision to terminate Hannah on that ground is discrimination based on sex.").

A comprehensive reading of Hannah's Complaint, however, does not support such an argument and reveals that Hannah's claim is based squarely on alleged discrimination due to his sexual orientation. Hannah describes Lynch as a "particularly homophobic" person, who would "harass Plaintiff over his sexual orientation," and "make disparaging comments about his sexual orientation." Compl. (Doc. 1) ¶¶ 13, 14, 36. Though Hannah's Complaint references his marriage, it makes plain that Lynch was not driven by dislike for Hannah's marital status *per se*, but by Hannah's decision to marry another male as a manifestation of his sexual orientation. Id. at ¶¶ 16, 36 (Hannah contends that Lynch would "show rank hostility toward Plaintiff over his sexual orientation, particularly after his marriage" and that issues with Hannah's work performance arose after "other [sic] learned [Hannah] and his partner had decided to marry"); see also Snyder v. Ohio Elec. Motors, Inc., No. 1:17-CV-00134, 2018 WL 1353124, at *2 (W.D.N.C. Mar. 15, 2018) (liberal reading of plaintiff's complaint indicated he was alleging discrimination on account of his sexual orientation).

Consequently, the undersigned will recommend that Hannah's federal claim be dismissed.

### B. Hannah's Wrongful Discharge Claim

Hannah makes a similar claim under North Carolina state law, specifically that WestRock's discriminatory actions violated the public policy of North Carolina "to protect

9

and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of…sex…by employers which regularly employ 15 or more employees," as contained in N.C.G.S. § 143-422.2. Compl. (Doc. 1) ¶ 41.

"The doctrine of supplemental jurisdiction indicates that federal courts generally have discretion to retain *or* dismiss state law claims when the federal basis for an action drops away." Shanaghan v. Cahill, 58 F.3d 106, 109 (4th Cir. 1995) (emphasis in original) (citing 28 U.S.C. § 1367 (1993)). However, federal courts should be cautious in exercising supplemental jurisdiction over claims that involve novel or unsettled issues of state law. See Johnson v. Barlow, No. CIV. S-06-01150, 2007 WL 1723617, at *2 (E.D. Cal. June 11, 2007) ("When state law is substantially unsettled, a district court may be left without sufficient guidance as to how to resolve a dispute, which weighs against exercising supplemental jurisdiction.") (citing Moor v. Alameda Cty., 411 U.S. 693, 716 (1973)).

Here, the public policy expressed in North Carolina's wrongful discharge statute, N.C.G.S. § 143-422.2, is "essentially identical to the public policy articulated in Title VII." Phillips v. J.P. Stevens & Co., 827 F. Supp. 349, 353 (M.D.N.C. 1993). Further, the Supreme Court of North Carolina has adopted "the evidentiary standards and principles of law" applied to Title VII cases by federal courts "insofar as they are not in conflict with [North Carolina] statutes and case law." See N. Carolina Dep't of Correction v. Gibson, 301 S.E.2d 78, 85 (N.C. 1983). As authorities have not been found indicating that North Carolina has adopted a contrary interpretation of N.C.G.S. § 143-422.2, Hannah's state law claim is subject to dismissal on the same basis as his Title VII claim. McDougal-Wilson

v. Goodyear Tire & Rubber Co., 427 F. Supp. 2d 595, 621 (E.D.N.C. 2006); Jones v. Southcorr, L.L.C., 324 F. Supp. 2d 765, 783 (M.D.N.C. 2004), aff'd sub nom. Jones v. Southcorr, LLC, 117 F. App'x 291 (4th Cir. 2004).

Nonetheless, given that conflicting views of Title VII's "because of…sex" provision have developed among federal courts, the undersigned will recommend that Hannah's state law claims be dismissed without prejudice so that the state courts of North Carolina may be given an opportunity to consider whether N.C.G.S. § 143-422.2 should be interpreted as prohibiting the termination of employment on the basis of sexual orientation.

## V. Conclusion

Considering the foregoing, the undersigned **RECOMMENDS:**

1. That Defendant's Motion to Dismiss (Doc. 4) be **GRANTED**;
2. That Plaintiff's federal claim be **DISMISSED WITH PREJUDICE**; and
3. That the District Court decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) over Plaintiff's state law claim and that such claim be **DISMISSED WITHOUT PREJUDICE**.

Signed: February 25, 2019

W. Carleton Metcalf
United States Magistrate Judge

11

Case 1:18-cv-00160-MR-WCM   Document 16   Filed 02/26/19   Page 11 of 11